AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Purple Motorola Cell Phone Assigned Telephone<br>Number 717-712-2752,<br>IMEI: 358289931011016 | )<br>)<br>)<br>)<br>)<br>)    Case No.   1:24-MC- 0729 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____ Middle _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g) | Felon in Possession of Firearms and Ammunition |

The application is based on these facts:

I, Cory Clifford, being first duly sworn, hereby depose and state as follows:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Cory Clifford, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means).*

Date: SEPT. 4, 2024

_____
*Judge's signature*

City and state:  Harrisburg, PA

DARYL F. BLOOM, Chief United States Magistrate Judge
*Printed name and title*

## CONTINUATION SHEETS

1.      (cont'd) I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device, as described below and in Attachment A ("the Subject Device"), which is currently in law enforcement possession, and the extraction from the Subject Device of electronically stored information described in Attachment B.

2.      I am a Special Agent with Homeland Security Investigations ("HSI") and have been since September 2015. Prior to my employment as a Special Agent, I was a United States Border Patrol Agent and later a Supervisory United States Border Patrol Agent from June 2008 until September 2015. I am currently assigned to York, Pennsylvania. Since becoming a Special Agent, I have participated in numerous investigations into international narcotics trafficking, money laundering, child exploitation, and intellectual property rights.

3.      I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses

1

enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code and other related offenses.

4.    In addition to my investigative experience, I have successfully completed the following trainings: U.S. Border Patrol Academy, Criminal Investigator Training Program, and Immigration and Customs Enforcement ("ICE") Special Agent Training. I earned a bachelor's degree in English literature in 2004 and a master's degree in education in 2006, both from Le Moyne College, in Syracuse, New York.

5.    Since being employed by HSI, I have participated in numerous narcotics investigations and have become familiar with, among other things: the manner in which illegal drugs are imported and distributed; the methods of payments for such drugs; and the efforts of persons involved in such activities to avoid detection by law enforcement. As a federal investigator, I have conducted interviews of witnesses, victims, and suspects. I have also utilized physical and electronic surveillance as well as pen registers and trap and trace devices in furtherance of investigations. I have participated in searches authorized by consent, search warrants, and other legal grounds for residences, businesses, electronic devices, and vehicles for the purpose of obtaining

evidence.

6.      Based on the information set forth below, and my knowledge, training and experience, I submit that there is probable cause to believe that Philip SHEARER used the Subject Device in furtherance of a violation of 18 USC 922(g), Felon in Possession of Firearms and Ammunition, that evidence of criminal activity can be found on the Subject Device.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other officers, agents, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      The Subject Device is: (1) Purple Motorola Moto G Pure, cell phone with IMEI: 358289931011016, assigned telephone **717-712-2752**. The Subject Device is currently in the possession of Homeland Security Investigations, 2350 Freedom Way, Suite 250, York, Pennsylvania 17402.

9.      The applied-for warrant would authorize the forensic

examination of the Subject Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10.   On or about May 9, 2024, Homeland Security Investigations in York, Pennsylvania received information that Philip SHEARER, a M&T Bank customer, was conducting financial transactions with various companies that sell firearms and ammunition, as well as companies associated with the sale of "80% firearms." M&T Bank records indicated that the residence associated with SHEARER's account was 1305 High St., Boiling Springs, Pennsylvania. Additional law enforcement checks identified SHEARER as a convicted felon and therefore, prohibited from purchasing firearms and ammunition.

11.   80% firearms" are known as such as they are eighty percent complete in terms of becoming a fully functional firearm. Some minimal remaining fabrication steps are required to fully finish the firearm. The supplies to build a fully functional firearm ("80% kit or 80% lower") may be bought from online vendors. Since it is sold as a partially complete firearm and merely has the potential to be fabricated into one, the sale of the kit or lower does not fall under the regulations concerning the

4

sale and transfer of firearms. In the case of a fully completed firearm, some requirements include the completion of the ATF Form 4473, Firearms Transaction Record, as well as the transfer of the information contained within to the National Instant Criminal Background Check System (NICS). NICS checks prevent certain categories of prohibited persons from obtaining firearms, including convicted felons. The purchase of an 80% firearm can circumvent these restrictions and result in an unserialized firearm, commonly known as a "ghost gun." With the increased availability of 80% percent firearms, this manner of privately producing a firearm has become increasingly utilized by prohibited persons, who would otherwise be restricted from obtaining a firearm. The unserialized nature of the firearm is also attractive to criminals, as there is no record of the firearms production or transfer. Online ammunition sales are not subject to a NICS check, although convicted felons are still prohibited from possessing ammunition.

12.    In October of 2022, SHEARER attempted an in-person purchase of two long rifles at Sportsman's Warehouse, in Camp Hill, Pennsylvania. An administrative summons response from Sportsman's Warehouse indicated that SHEARER completed two ATF Form 4473s

(one for each firearm), subsequently failed a NICS check, and was denied the purchases. A review of the ATF Form 4473s completed by SHEARER revealed that SHEARER checked "no" on question 21C, which asks "Have you ever been convicted in any court, including a military court, of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" A review of SHEARER'S criminal record indicated that SHEARER had been arrested by the Pennsylvania State Police on August 9, 1994, for receiving stolen property (Felony 3). The stolen property received by SHEARER was a handgun that had been taken earlier in a burglary in Boiling Springs, PA. SHEARER was subsequently convicted of the felony charge and sentenced to county prison for a period of ten (10) days to twenty-three (23) months. SHEARER was also arrested and convicted of receiving stolen property (Misdemeanor 1). On November 14, 2000, SHEARER was sentenced to county prison for a term of twenty-two (22) days to twenty-two (22) months. This charge carried a maximum penalty of 5 years.

13.   A review of SHEARER's financial transactions using his M&T Bank accounts, revealed that SHEARER been transacting with various

firearms and outdoor companies since December 2022. HSI submitted administrative summonses to the firearms, ammunition, and outdoor retailers identified in SHEARER's financial transactions and received responses indicating what items were purchased by SHEARER on those occasions.

14.    M&T Bank information indicated that on January 6, 2023, a payment posted to SHEARER's account for an online purchase from Moriarti Armaments in the amount of $665.75. A summons response from Moriarti Armaments included a purchase invoice from January 4, 2023, order #114668. The invoice indicated that SHEARER made a purchase of an "AR-15 5.56/.223 Complete Compression Series Micro Pistol Kit," a "AR-15 lower upgrade kit," and a "Magpul AR-15 MBUS Front Back Up Sight/ Gen 2." The order also included an add-on of a "Magpul PMAG 30 round 5.56/.223 magazine." The payment and shipping address listed on the invoice were the same, both listing Philip SHEARER, 1305 High St., Boiling Springs, PA 17007.

15.    In addition, on the Moriarti Armaments product page for the AR-15 Complete Compression Series Micro Pistol Kit, the web site explains, "This pistol kit contains all components to complete your AR-15

Rifle, except 80 percent stripped lower receiver, available for purchase separately." Significantly, the invoice specifies that SHEARER added the AR-15 Lower Upgrade Kit, as well as a magazine, and opted for the "assembled upper," which requires minimal assembly. This invoice represents that SHEARER has bought almost everything necessary to assemble a completed firearm. He has also purchased a magazine to contain ammunition for the firearm.

16.    M&T Bank information indicated that on January 9, 2023, a transaction posted to SHEARER's account indicating that SHEARER made an online purchase from 80 Percent Arms in the amount of $816.81, order number 591822. A response to an administrative summons from 80 Percent Arms indicated that on January 8th, 2023, SHEARER made on online purchase for two Glock 19, ten round pistol magazines as well as an "GST-9" 80% pistol build kit. The 80 Percent Arms website describes the GST-9 80% build kit as "everything you need to build a top-tier handgun." The website also states in a disclaimer below the product that "due to ATF regulations, we cannot legally include the jig or frame rails with the GST-9 frame. The jig and GST-9 frame must be purchased on our website as two separate items. Each jig includes one set of GST-9

frame rails. You will need to purchase one jig for every GST-9 frame you plan to build. Frame rails are ONLY included with the jig, not with the 80% lower itself." [1] The shipping and billing address utilized by 80 Percent Arms to fulfill the order is that of 1305 High St, Boiling Springs, PA 17007, in the name of Philip SHEARER. The invoice also listed the contact email address as 1philshearer@gmail.com.

17.    M&T Bank information indicated that SHEARER made an online purchase that posted to his account on January 17, 2023, from 80 Lowers in the amount of $102.53. A response to an administrative summons revealed that the item purchased on January 14, 2023, was an 80% Lower/Safe Marked Receiver. The product page on the website states "this 80 percent lower is the key to building your custom AR-15 truly from scratch." The shipping and billing address listed for the purchase was that of 1305 High St, Boiling Springs, PA 17007, in the name of Philip SHEARER. The email address associated with the order was

---

[1] A lower firearms receiver is the part of an AR-style split receiver firearm that contains the serial number and the internal components such as the trigger assembly and safety controls. It is usually made of aluminum and holds the magazine. 80% percent finished lower receivers generally require drilling by the end-user to hollow out the receiver that has shipped as a semi solid block of metal.

"1philshearer@gmail.com".

18.     M&T Bank information indicated that on March 15, 2023, a payment was posted to SHEARER's account for an online purchase from kmwhisper.com for two transactions, one for $101.15 and one for $58.65. Kmwhisper.com is now defunct. However, open-source internet research revealed that kmwhisper.com was previously engaged in 2023 in selling "solvent traps." Solvent traps are marketed as devices that attach to firearms barrels to catch excess solvent when cleaning firearms.  Some of the devices commonly marketed as solvent traps have been determined to meet the definition of a firearms silencer by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).

19.     On April 22, 2023, SHEARER made another online purchase from 80 Percent Arms in the amount of $59.86 of a "GST-9: Mod1, Jig w/tool kit & slide rails" – order number 610314. The charge posted to SHEARER's M&T account on April 24, 2024. A jig is used to ensure that the drilling required to fully finish a firearm is done in a precise manner. This jig that SHEARER ordered corresponds to his earlier purchase of the "GST-9 80% build kit." The jig will allow SHEARER to easily convert the pistol build kit into a fully functional firearm. On April 25, 2023,

SHEARER places an online order from 80 Percent Arms of one "All You Need Kit + 1 80% Lower." The lower selected for the kit is an AR-15 lower. Also included in the order were a "Freedom Jig Router" and "drill bits." The "Freedom Jig Router" is no longer sold on 80 Percent Arms website due to current ATF regulations, however, the previous product page describes it as having a "precision spindle with extra low runout gives you the ability mill out lowers with CNC like results, without building your own machine shop". Such a router would be utilized to drill out lower receivers so that they can be finished into fully functional firearms receivers. The shipping and billing address utilized by 80 Percent Arms to fulfill the order is that of 1305 High St, Boiling Springs, PA 17007, in the name of Philip SHEARER. The invoice also listed the contact email address as 1philshearer@gmail.com.

20.   An administrative summons served on Bass Pro Shops revealed several transactions linked to SHEARER's M&T Bank accounts, including an in-person purchase on May 5, 2023, in the amount of $70.83, which posted to his bank account on May 8, 2023. A receipt from Bass Pro Shops for that date reflected that SHEARER purchased an NRA Silhouette Target, corded plugs with case, Herter's Handgun

Ammunition, and food products. On May 20, 2023, SHEARER made an in-person purchase in the amount of $31.78, which posted to his bank account on May 22, 2023. A receipt obtained from Bass Pro Shops for that date indicated that SHEARER purchased two items of CCI Blazer Brass 9MM.

21.    M&T Bank information indicated that on May 26, 2023, a payment posted to SHEARER's account indicating that he made an online purchase from AmmoMan.com in the amount of $422.94. An administrative summons response from AmmoMan.com revealed that on May 25, 2023, the item purchased was one thousand (1000) rounds of Wolf .223 ammunition, order #907470688. The shipping and billing address listed for the purchase was that of 1305 High St, Boiling Springs, PA 17007, in the name of Philip SHEARER. The email address associated with the order was "1philshearer@gmail.com".

22.    A receipt obtained from Bass Pro Shops indicated that on July 1, 2023, SHEARER made an in-store purchase in the amount of $140.94 that included 9mm ammunition, a pistol holster, and two Glock magazines, transaction #310891. This transaction posted to SHEARER's M&T Bank account on July 3, 2023. A separate receipt provided for the

same date showed that SHEARER returned one of the Glock Magazines and was credited a total of $44.60, which is reflected in the M&T bank information.

23.     A receipt obtained from Bass Pro Shops indicated on August 27, 2023, that an in-store purchase was made by SHEARER in the amount of $37.60. The items purchased were Herter's Handgun Ammunition, corded plugs with case, and a classic coke. This transaction posted to SHEARER's M&T Bank account on August 29, 2023.

24.     A response to an administrative summons from Sportsman's Warehouse indicated that SHEARER made an in-person purchase on October 14, 2023, in the amount of $55.06 using his M&T Bank debit card. A receipt for the transaction indicated that he had purchased five (5), thirty-round AR-15 magazines, and a Hoppes Brush .17. Open source researched conducted indicated that his item was a Hoppes rifle cleaning bore brush. This transaction posted to SHEARER's M&T Bank account on October 16, 2023.

25.     A receipt obtained from Bass Pro Shops indicated that an in-person purchase was made using SHEARER's M&T debit card on November 5, 2023, in the amount of $63.59, which posted to his M&T

13

bank account on November 6, 2023. The transaction number was #17956. The item purchased was Walker Razor Slim Electronic. An open-source search revealed this item to be hearing protection for firearms shooters.

26.    A receipt obtained from Bass Pro Shops indicated that an in-person purchase was made using SHEARER'S M&T Bank debit card on January 15, 2024, in the amount of $95.36, which posted to SHEARER's M&T bank account on January 16, 2024. The items purchased included a cartridge boresight, CCI Blazer Brass 9mm, and a compact range vise. These are all components traditionally used for producing handmade ammunition.

27.    A receipt obtained from Bass Pro Shops indicated that an in-person purchase was made using SHEARERS's M&T Bank debit card on April 20, 2024, transaction #16859. The items purchased include a cartridge boresight and two Glock 17/19/26 magazines.

28.    A receipt obtained from Bass Pro Shops indicated that an in-person purchase was made using SHEARER's M&T Bank debit card in the amount of $95.53, transaction #3193. The item purchased was two items of Win Defender 40 S&W Ammunition.

29.    A receipt obtained from Bass Pro Shops indicated that an in-

person purchase was made on May 18, 2024, a purchase was made using SHEARER's M&T Bank debit card, in the amount of $32.85, transaction #20528. The item purchased was WIN USA 9mm ammunition.

30.   On June 12, 2024, HSI obtained video surveillance footage from Bass Pro Shops of the May 18, 2024, transaction. At the time, date, and register indicated by the receipt, a single male individual bearing the physical characteristics of SHEARER is seen conducting a transaction at the register. As SHEARER completes the transaction and leaves the store, a small box resembling those typically containing handgun ammunition is seen in his left hand.

31.   On or about June 6, 2024, in response to an administrative summons, HSI received information that SHEARER had rented a storage unit from U-Haul Storage but had since moved out of the unit on April 27, 2024. The primary phone number listed on SHEARER's U-Haul account was **717-712-2752** – the same phone number assigned to the Subject Device. On June 7, 2024, HSI contacted Gary SHEARER, Philip's father by phone, as he was listed as an alternate contact for the rental unit. HSI spoke to Gary SHEARER as part of a ruse to determine where Philip SHEARER was living by claiming to have some mail for Philip

SHEARER. Gary SHEARER stated that he did not speak to his son regularly as he was involved in drugs. Gary SHEARER knew Philip SHEARER to be living off and on with his mother at 1305 High St., Boiling Springs, PA.

32.    On the same date, HSI received a phone call and voicemail from Philip SHEARER on a law enforcement-controlled phone line identifying himself as Philip SHEARER and asking for the call to be returned. On June 7, 2024, Philip SHEARER sent a text message to the law enforcement-controlled phone line asking that any mail that was for him be sent to 1305 High St., Boiling Springs, PA. The number SHEARER used for the call and text was **717-712-2752**— the same phone number assigned to the Subject Device.

33.    Surveillance conducted at 1305 High St. did not reveal any signs of SHEARER at the residence. On June 20, 2024, a search warrant for information associated with the cellular telephone assigned call number **717-712-2752** ("ping warrant") was applied for and granted by the Honorable Daryl F. Bloom, Chief United States Magistrate Judge, Middle District of Pennsylvania (1:24-MC-0520). The assigned call number was that known to be utilized by SHEARER. Location data

obtained through the warrant revealed that SHEARER was residing in the vicinity of Market St., in Harrisburg, PA. On July 9th, 2024, a HSI Special Agent observed SHEARER on the doorstep of 1209 Market St., in Harrisburg, PA, prior to entering a vehicle on the street and going to work at D&H Distributing in Harrisburg, PA. On July 11, 2024, and July 12, 2024, a HSI Special Agent observed SHEARER exit the door of 1209 Market St. and enter a vehicle on the street and go to work. SHEARER was observed exiting 1209 Market Street on 7 August 2024.

34.    On July 24, 2024, a search warrant for information associated with the Google account "1philshearer@gmail.com" was applied for and granted by the Honorable Daryl F. Bloom, Chief United States Magistrate Judge, Middle District of Pennyslvania (1:24-MC-0592). On August 1, 2024, HSI Special Agents discovered an email within the material returned by Google in response to the warrant. The email was present in the email box of the account. The email was addressed to pm_eng@pmo.gov.il from Philip SHEARER (1philshearer@gmail.com) and dated July 18, 2024, 5:06 A.M. The subject of the email was "The sick Dick terrorist". The body of the email is as below:

*"Benjamin Netanyahu*

17

This is Philip Shearer

1209 market St Harrisburg Pennsylvania. 7177122752.

Its been a very long time. Hope we could get together and talk sometime soon.

I need military equipment and soldiers. My land corridor has a terrorist group on it. I want them all Dead. Mean gruesomely. That sick Westley Oler. Bailey, and Guido. Put a bunch of sick people on my land. Help me out with RPG's.

I would like to missile strike the shit out of the place.

Please missile strike that Cumberland county courthouse, like I told you I want to get done way back. These sick people robbed me for over 600 million dollars.

Remember the plan President Putin and I had for Crimea and Ukraine. Well we need to get that little punk Zelenski out of there. You do know that this is Trump's and Hillary Clinton's proxy. The are destroying all economies. Your's also.

I hope you remember the lobster, and the fish tank we were putting in the Arabit spit. Well we got the bridge in. The Kersh bridge. And with this attack from Zelenski and the others we can't get the Pixar theme park built.

Let's tear a new asshole in Cumberland county. A couple surrounding counties need it too.

That is good contact info. I work at D&H Distribution as a forklift driver making ends meat. While them terrorist are destroying my corridor. There is to other properties. That's why I need soldiers.

Thank you."

35.    Using open-source information, HSI Special Agents were able to confirm that the email address that SHEARER sent his email to belongs to the Israeli government. In addition, SHEARER later received a receipt in his email box from the same email address acknowledging that the Israeli government had received his email. The email sent clearly illustrates SHEARER's desire to obtain arms to purge his "corridor" of "terrorists." In it, he specifically asks Benjamin Netanyahu, the Prime Minister of Israel, to provide him with "RPG's" (rocket propelled grenades) and requests that the Cumberland County courthouse be the target of an airstrike. In addition, the sending time and weekday corresponds to the time and days on which SHEARER is generally known to be at 1209 Market St., prior to starting his workday. SHEARER also confirms his residential address within the body of the email. The phone number given by SHEARER matches that of the number being actively "pinged", pursuant to the search warrant issued on June 20, 2024, and a second search warrant issued on July 18, 2024. The location data associated with the assigned telephone number indicated that on the date the email was sent, the data was consistent with other occasions on which SHEARER has been observed at 1209

Market St.

36.    An administrative summons previously generated and submitted to Verizon Wireless for the assigned telephone number specified in the two previous search warrants (717-712-2752) returned with information related to the number. The information returned by Verizon Wireless indicated that the device subscribed to the phone line was a Motorola, model XT2163DL. The information returned by Google in response to the search warrant indicated that the device associated to the Google account was a Motorola Moto G Pure, model XT2163DL. The last activity date logged by Google (as of the date of the returned information) was on July 21, 2024. Based on the returned information related to the administrative summons and the search warrant, it is likely that the mobile device currently accessing the Google account associated to the email address 1philshearer@google.com is the same device subscribed to the Verizon Wireless phone number. It is therefore likely that the cell phone was utilized by SHEARER to access material representing evidence of violations of 18 USC 922(g)(1), Felon in Possession of Firearms and Ammunition.

37.    Agents also noted a discrepancy in the email section of the

information returned by Google pursuant to the search warrant. In particular, agents reviewing the email box of the Google account noticed that there was a gap in the emails received by SHEARER. The last email available for review was a deleted email received on December 24, 2023. The next email available for review was an email receipting the order of a YUME electric scooter on May 5, 2024. Between December 24, 2023, and May 5, 2024, there were no emails available for review, even those marked as deleted. This corresponds to the time period in which purchases were made from online and brick and mortar firearms related businesses. Between January 6, 2023, and April 26, 2023, SHEARER made purchases from Moriarti Armaments, 80 Percent Arms, Bass Pro Shops, 80 Lowers, Capitol Armory, Sportsman's Warehouse, and Kmwhisper.com. None of the expected emails confirming online orders were present in SHEARER's email inbox. No emails at all were present in SHEARER's email inbox during this time period. This could indicate that SHEARER deleted emails present in his deleted folder within his mailbox. SHEARER's email inbox is full of regularly deleted emails that are still visible to investigators from the information return from Google, however, none of them involve known or heretofore unknown purchases

of firearms related products. As the gap of time of the missing emails is so conspicuous in its relationship to the firearms related purchases, it is likely that SHEARER has intentionally deleted emails from his deleted folder relating to firearms purchases to conceal them from being discovered by law enforcement.

38.    In the Google activity history section of the return, on May 22, 2024, SHEARER was visiting web sites related to the production of ghost guns from partial kits. For example, the activity history section recorded visits to "AR 308 Complete Upper Receiver – Veriforce Tactical," "https://pro2a-tactical.com/ar-10-upper-assemblies-parts.html," AR-308 Stripper Upper Receivers Online/5D Tactical," "DPMS 308 Combo - Complete Lower / Upper Receiver - Juggernaut ...," "AR-15 Gun Build Kits | Proudly USA-Made | Durkin Tactical," "AR-308 & AR-10 Upper Receivers For Sale | Primary Arms," and "Complete Upper Receivers for Sale | 80% Arms - 80 Percent Arms." An upper receiver is the is the part of an AR-15 style split receiver firearm that connects the barrel, bolt carrier group, and charging handle to the lower receiver and accessories. It can be seen as the upper half of an AR-15 rifle. Of note is that SHEARER was previously ordering 80% percent lower receivers and

associated parts in January 2023 through April 2023. This web history likely represents a progression in terms of SHEARER's progress in producing a fully finished firearm.

39.     On August 7, 2024, a Federal Grand Jury sitting in Harrisburg, Pennsylvania handed down a one count indictment of SHEARER for a violation of 18 USC 922(g), Felon in Possession of Firearms and Ammunition. An arrest warrant for SHEARER was issued from the indictment on the same date.

40.     On August 9, 2024, at approximately 8:10 A.M., HSI executed the arrest warrant for SHEARER and took him into custody in Harrisburg, PA. A search incident to arrest led to the discovery of the Subject Device, a purple Motorola cell phone, in the pocket of SHEARER's pants. Agents called the assigned cell phone number that the ping warrant had been issued for (717-712-2752). The cell phone rang and displayed the number agents had called from, confirming the device was the same as that specified on the ping warrant.  The cell phone was seized and maintained in evidence.

41.     I know, based on my training and experience, including in this investigation, that individuals who purchase firearms components online

23

and are engaged in the manufacture of firearms, often maintain records (including financial records, receipts, notes, ledgers, mail, tax records, and other papers) related to their crimes, and these records are often maintained for extended periods of time, and at places where the individuals can have ready access to them, such as their residences, offices, and vehicles. In my training and experience, I further know that individuals who have committed crimes using computers often keep records of their crimes in digital or electronic format, for example on their computers, tablets, and cell phones, and that due to the small size of these devices, they can be stored in the individual's residence(s), in their vehicles, or on their persons.

42.    In this case, SHEARER has made several online purchases of firearms components. As such, electronic records of these purchases and other transactions that may be unknown to investigators are probable to exist on electronic storage media, including cell phones and computers. At least several of these shipments were assigned shipping company tracking numbers. These numbers would be of great importance to SHEARER in terms of knowing when packages of components would arrive. SHEARER would necessarily have to use a cell phone or computer

to check various tracking numbers of inbound shipments of firearms components. It is probable that records of past shipments exist on electronic storage media, including cell phones and computers. It is also probable that that evidence exists on electronic devices, including cell phones and computers in the form of emails or messages to the various firearms companies inquiring about different products or how they could be utilized to fabricate a firearm.

43.    In addition, reference materials for the fabrication of firearms are commonly found on the internet. During the assembly of the firearms, these reference materials would be used. It is probable that these reference materials illustrating intent to fabricate these firearms, as well as intent to possess these firearms, exist on electronic storage media, including cell phones and computers.

44.    The Subject Device is currently in the possession of Homeland Security Investigations in the evidence room at 2350 Freedom Way, Suite 250, York, Pennsylvania 17402. In my training and experience, I know that the Subject Device has been stored in a manner in which its contents are, to the extent material to this investigation, in

substantially the same state as they were when the Subject Devices first came into the possession of HSI.

## TECHNICAL TERMS

45.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and

downloading information from the Internet.  Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards

or miniature hard drives.  This removable storage media can also store

any digital data.  Depending on the model, a portable media player may

have the ability to store very large amounts of electronic data and may

offer additional features such as a calendar, contact list, clock, or

games.

      d.    GPS:  A GPS navigation device uses the Global

Positioning System to display its current location.  It often contains

records the locations where it has been.  Some GPS navigation devices

can give a user driving or walking directions to another location.  These

devices can contain records of the addresses or locations involved in

such navigation.  The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each

satellite contains an extremely accurate clock.  Each satellite repeatedly

transmits by radio a mathematical representation of the current time,

combined with a special sequence of numbers.  These signals are sent

by radio, using specifications that are publicly available.  A GPS

antenna on Earth can receive those signals.  When a GPS antenna

receives signals from at least four satellites, a computer connected to

that antenna can mathematically calculate the antenna's latitude,

longitude, and sometimes altitude with a high level of precision.

        e.     PDA:  A personal digital assistant, or PDA, is a

handheld electronic device used for storing data (such as names,

addresses, appointments or notes) and utilizing computer programs.

Some PDAs also function as wireless communication devices and are

used to access the Internet and send and receive e-mail.  PDAs usually

include a memory card or other removable storage media for storing

data and a keyboard and/or touch screen for entering data.  Removable

storage media include various types of flash memory cards or miniature

hard drives.  This removable storage media can store any digital data.

Most PDAs run computer software, giving them many of the same

capabilities as personal computers.  For example, PDA users can work

with word-processing documents, spreadsheets, and presentations.

PDAs may also include global positioning system ("GPS") technology for

determining the location of the device.

        f.     Internet: The Internet is a global network of computers

and other electronic devices that communicate with each other.  Due to

the structure of the Internet, connections between devices on the

Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

46.    Based on my training and experience, I believe that the Subject Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and that the Subject Devices can access the Internet. In my training and experience, examining data stored on a device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices and where.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

47.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

48.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the

Subject Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence would be on the Subject Device because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed

along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

49.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Device to human inspection in order to determine whether it is evidence described by the warrant.

50.    *Manner of execution.* Because the requested warrant seeks only permission to examine a device already in law enforcement's possession, the execution of the requested warrant will not involve the

physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Device described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

1.    The property to be searched is: (1) Purple Motorola Moto G Pure, cell phone with IMEI: 358289931011016, assigned telephone **717-712-2752** (Subject Device).  The Subject Device is currently in the possession of Homeland Security Investigation, 2350 Freedom Way, Suite 250, York, Pennsylvania 17402.

This warrant authorizes the forensic and manual examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.   All records, information, and items on the Subject Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g), evidence who used the device and when and from where, including:

    a. incoming and outgoing call and text message logs;

    b. contact lists;

    c. photo and video galleries;

    d. sent and received text messages and content, from all applications;

    e. online searches and sites viewed via the internet;

    f. online or electronic communications sent and received, including email, chat, and instant messages;

    g. sent and received audio files;

    h. navigation, mapping, and GPS files;

    i.  telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone;

    j.  call forwarding information;

    k.  messages drafted but not sent; and,

    l.  voice messages.

    m. all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Subject Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Evidence of the location of the Subject, including GPS coordinates; and

4.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.